UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
COW BAY SPRINKLER CORP.,                    :
                                            :
            Plaintiff,                   :
                                            :  **REPORT & RECOMMENDATION**
   -against-                               :
                                            :  19 Civ. 5854 (LDH) (VMS)
HOUSTON CASUALTY CO.,                       :
                                            :
            Defendant.                   :
------------------------------------------------------------ X

**VERA M. SCANLON, United States Magistrate Judge:**

Before the Court on referral from District Judge LaShann DeArcy Hall is a motion by Cow Bay Sprinkler Corporation ("Plaintiff") to remand its action to the Supreme Court of the State of New York, Nassau County.  ECF No. 11.  For the following reasons, the undersigned respectfully recommends that Plaintiff's motion be denied.

**I.     BACKGROUND**

This action arises out of a dispute regarding insurance coverage in connection with a construction project (the "Project") at 21 Park Place, New York, New York ("21 Park Place").  Compl., ECF No. 1 at 7 ¶¶ 1, 6.  According to the Complaint, Defendant provided general liability insurance protection (the "Policy") to Plaintiff, a general contractor, for various projects, including the Project at 21 Park Place.  Id. at 8 ¶ 6.  In or about December 2018, a building at 21 Park Place where Plaintiff was working collapsed.  Id. at 9 ¶ 16.  The adjoining property at 23 Park Place, New York, New York ("23 Park Place") was allegedly damaged.  Id. at 9 ¶¶ 16-19.  Counsel for one of the tenants of 23 Park Place, Murray Place, Inc. ("Murray"), notified Plaintiff that Murray's insurer intended to hold Plaintiff responsible for damages sustained as a result of the collapse.  Id. at 9 ¶¶ 20-23.  Murray then commenced a lawsuit in New York State Supreme

1

Court against Plaintiff and others alleging negligence (Murray Place, Inc. v. 21 Park Place NY LP, et al., Sup. Ct. N.Y. Co., Index No. 157109/19 (the "Murray Litigation" or the "Underlying Action")).  Id.  The complaint in the Murray Litigation alleges that the collapse at 21 Park Place forced Murray, which owned a bar/restaurant occupying a portion of the first floor, second floor, mezzanine and cellar of the five-story building at 23 Park Place, to close its business and vacate the premises.  Murray Compl., ECF No. 15-5 ¶¶ 8-9, 16-18.  Murray seeks to recover "an amount to be determined at trial, but which shall include lost profits for the period of time after December 21, 2018 and through the expiration of the Lease, plus interest." Murray Compl. ECF No. 15-5 ¶¶ 9, 25, 29, 33.  The Lease was a fifteen-year agreement dated December 20, 2013, meaning that Murray seeks ten years of lost profits plus interest.  Id.

Plaintiff tendered defense of the Murray Litigation to Defendant, but, as a result of a disputed Policy exclusion, Defendant rejected Plaintiff's claim and declined to defend and indemnify Plaintiff in the Murray Litigation.  Compl. at 10 ¶¶ 24-25.  In response to Defendant's denial, Plaintiff filed suit in the Supreme Court of the State of New York, Nassau County, alleging breach of contract, seeking a money judgment "of an amount [] to be determined at trial," and seeking a declaratory judgment that, under the Policy, (i) Defendant owed and breached a duty to defend Plaintiff in the Murray Litigation, and (ii) Defendant is obligated to pay any reasonable settlement of the Murray Litigation up to the amount of the loss limit applicable to that covered claim and within the Policy limits, and reasonable fees and expenses incurred in defending or settling the Murray Litigation.  Id. at 11-12 ¶¶ 26-34.  Thus, Plaintiff alleges claims against Defendant for both breach of contract and declaratory judgment.  Compl. ¶¶ 26-34.

Defendant removed this action to this Court on the basis of diversity jurisdiction, alleging that Plaintiff is a domestic corporation with its principal place of business in New York; Defendant is a foreign corporation, with its principal place of business in Texas; and "Plaintiff is seeking damages in the form of a money judgment, post-tendered fees and expenses and settlement costs which exceed[] $75,000." See Notice of Removal, ECF No. 1 at 3 ¶¶ 3-6. Plaintiff moves to remand the action to state court, asserting that "the amount in controversy does not exceed $75,000 as required by 28 U.S.C. § 1332(a)(1)." Motion to Remand ("Mot. Rmd.") at ECF No. 11 p. 1.

In opposition to Plaintiff's motion to remand, Defendant provided a letter dated December 27, 2018 (the "Seneca Claim" letter), addressed from Kahn & Goldberg, LLP, on behalf of Seneca Insurance Co. ("Seneca.") ECF No. 15-2. The letter gives Plaintiff Cow Bay notice that Seneca intends to seek to recover from Plaintiff repair costs to 23 Park Place (the adjacent building allegedly damaged by the collapse of 21 Park Place) anticipated to be in excess of $100,000 (the "Seneca Claim"). Id. Defendant also attached a "Liability Notice of Occurrence / Claim" form dated January 3, 2019, which was submitted to Defendant by an insurance broker on behalf of Plaintiff Cow Bay to request coverage for the Seneca Claim and to which the Seneca Claim letter was attached. ECF No. 15-3.

## II. ANALYSIS

### a. Removal On Grounds Of Diversity Jurisdiction

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). The statutes concerning removal are strictly and

3

narrowly construed, "resolving any doubts against removability."  Purdue Pharma L.P. v. Kentucky, 704 F.3d 208, 213 (2d Cir. 2013) (quoting Lupo v. Human Affairs Int'l, Inc., 28 F.3d 269, 274 (2d Cir. 1994)).  The burden of proving that jurisdiction is proper is on the party that removed the action.  See Montefiore Med. Ctr. v. Teamsters Local 272, 642 F.3d 321, 327 (2d Cir. 2011); 28 U.S.C. 1446(c)(2)(B).  District courts have original jurisdiction where there is diversity of citizenship between the parties and an amount in controversy exceeding $75,000.  28 U.S.C. § 1332.  Where, as here, the Complaint seeks, inter alia, nonmonetary relief, the notice of removal may assert the amount in controversy, and removal is proper on the basis of that amount "if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in [28 U.S.C. § 1332(a)]."  See 28 U.S.C. §§ 1446(c)(2)(A)-(B); see also Dart Cherokee Basin Operating Co. v. Owens, 574 U.S. 81, 88 (2014) ("In sum, as specified in §1446(a), a defendant's notice of removal need only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold.  Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation.")

Although Plaintiff does not appear to contest the diversity of the parties, Plaintiff does allege that the petition for removal is deficient because the Complaint does not explicitly allege damages meeting the jurisdictional amount.  See Compl ¶¶ 2-3; id., generally.  Defendant's removal petition alleges that "Plaintiff is seeking damages in the form of a money judgment, post-tendered fees and expenses and settlement costs which exceeds $75,000."  Notice of Removal, ECF No. 1 at 3 ¶ 3.  Plaintiff disputes Defendant's assertion that the amount in controversy meets the requisite threshold, and it argues that the value of the relief Plaintiff seeks

4

"is pure speculation." Mot. Rmd., p. 5.[1] The Court must determine whether Defendant has shown by the preponderance of the evidence that the amount in controversy exceeds the jurisdictional threshold. See 28 U.S.C. §§ 1446(c)(2)(A)-(B). In making this determination, the Court need not confine its inquiry to the content of the pleadings and the removal notice. See Pollock v. Trustmark Ins. Co., 367 F. Supp. 2d 293, 297 (E.D.N.Y. 2005) ("Where there is no dollar amount alleged in the complaint and the action is in federal court by a notice of removal, a reasonable probability that the jurisdictional amount is met can be established by competent evidence from other sources. . . . The court looks first to the complaint, and then to moving papers, and then to anything else.") (citing Mehlenbacher v. Akzo Nobel Salt, Inc., 216 F.3d 291, 296 (2d Cir. 2000); United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark Props. Meriden Square, Inc., 30 F.3d 298, 305 (2d Cir. 1994)); accord Robinson v. Berkshire Life Ins. Co., No. 18 Civ. 7689 (JPO), 2019 U.S. Dist. LEXIS 64695, at *6, 2019 WL 1614831, at *2 (S.D.N.Y. Apr. 16, 2019) (same).

Plaintiff cites to the Circuit's decision in Lupo as supporting the proposition that the Court should confine its inquiry to the initial pleading and the notice of removal. See Mot. Rmd. p. 5. In Lupo v. Human Affairs International, the Second Circuit vacated a lower court's dismissal of the plaintiff's case on the grounds that the district court had lacked subject matter jurisdiction over the case in the first instance. See Lupo v. Human Affairs Int'l, 28 F.3d 269, 274 (2d Cir. 1994). The Lupo Court did not accept diversity jurisdiction as timely raised, however, so the Court's decision held that the defendant lacked standing to even introduce

---

[1] Notwithstanding, Plaintiff "concedes that the value of the Defendant's policy under which it is [allegedly] entitled to coverage is $1,000,000." Id., n.4.

5

evidence of diversity jurisdiction. The Mehlenbacher Court explained the procedural issue in Lupo:

> We note that in [Lupo], after finding that neither the plaintiff's complaint nor the defendant's notice of removal alleged facts adequate to establish the requisite amount in controversy, we declined to allow the defendant, on remand, to introduce further evidence supporting jurisdiction, and instead directed the district court to send the case back to state court. In that case, however, the defendant's notice of removal improperly asserted federal question jurisdiction as the basis for removal, and the alternative basis of diversity jurisdiction was not raised by the defendant until appeal. . . . This case stands on a different footing from Lupo for the simple reason that Akzo has asserted diversity jurisdiction from the start . . . .

Mehlenbacher, 216 F.3d 291, 298 (2d. Cir. 2000) (remanding the matter to the district court for "inquiry into the existence of jurisdiction"). Here, as in Mehlenbacher, Defendant alleged diversity jurisdiction in its notice of removal. Thus, Lupo's instruction that a defendant who fails to allege diversity jurisdiction may not seek removal on those grounds is inapplicable here, and the Court considers the full record in making its recommendation below.

### b. The Relief Requested By Plaintiff Determines The Amount In Controversy

"The starting point for determining the amount in controversy is the type of relief requested." Pollock, 367 F. Supp. 2d at 297. "[T]he amount in controversy is calculated from the plaintiff's standpoint; the value of the suit's intended benefit or the value of the right being protected or the injury being averted constitutes the amount in controversy when damages are not requested." Correspondent Servs. Corp. v. First Equities Corp., 442 F.3d 767, 769 (2d Cir. 2006) (quoting Kheel v. Port of New York Auth., 457 F.2d 46, 49 (2d Cir. 1972) (internal quotations omitted)). Where a single plaintiff files multiple claims for relief against a single defendant, the Court may aggregate those claims to determine the amount in controversy to the extent the damages sought do not overlap. See Hall v. Earthlink Network, Inc., 396 F.3d 500, 507 (2d Cir. 2005) (recognizing validity of aggregation of claims of actual and consequential damages, breach of implied covenant of fair dealing, and negligent appropriation); Pollock, 367 F. Supp.

6

2d, at 301 ("No case, however, allows the aggregation of claims which seek the same damages in claims under varying theories.").

### i. Contractual Relief

"Where a plaintiff is seeking damages for a breach of contract … the amount in controversy depends on the amount recoverable under contract law." Pollock, 367 F. Supp. 2d at 297. Under New York law, breach-of-contract damages are compensatory – those which the plaintiff needs to be made whole. Id. Plaintiff here seeks "all post-tender reasonable fees and expenses . . . necessarily incurred in defense of the Underlying Action and the Seneca Claim, plus pre-judgment interest accruing from the date of [Defendant's] initial repudiation of its duty to defend the Underlying Action . . . ." Compl. ¶ 30. In other words, Plaintiff seeks to recover the money plus interest that it will spend on defending against the Underlying Action and the Seneca Claim from the date Defendant allegedly breached the coverage agreement under the Policy, through the date of any judgment. To determine the amount in controversy for diversity purposes however, the Court looks only at the alleged damages as they had accrued when the notice of removal was filed. See Pollock, 367 F.3d at 299 (". . . [T]he amount in controversy is established as of the date of the complaint (or of the notice of removal) and "is not reevaluated based on post-filing events") (citing Hall, 396 F.3d at 507; Torah Soft, Ltd. V. Drosnin, No. 00 Civ. 0676 (JCF), 2003 U.S. Dist. LEXIS 15584, *4, 2003 WL 22077414, (S.D.N.Y. Sept. 8, 2003)). On the current record, the contract damages do not meet the threshold.

### ii. Declaratory Relief

Plaintiff also seeks a declaratory judgment. Where the relief sought is declaratory in nature, "it is well established that the amount in controversy is measured by the value of the object of the litigation." Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 347 (1977).

7

Unlike a claim for damages only, the court's valuation of the amount in controversy here may be forward looking, as "the amount in controversy is not necessarily the money judgment sought or recovered, but rather the value of the consequences which may result from the litigation." Beacon Constr. Co. v. Matco Elec. Co., 521 F.2d 392, 399 (2d Cir. 1975) (citing Smith v. Adams, 130 U.S. 167, 175 (1889)).  In actions seeking insurance coverage, there are two strands of analysis to assessing this value: first, in which the value is the underlying claim or claims, and second, in which the face value of the policy controls.  As to the first, although the Second Circuit has not directly addressed this issue, other circuits have opined that where the applicability of an insurance policy to a particular occurrence is at issue, the value of the underlying claim or claims controls the amount in controversy.  See, e.g., Hartford Ins. Group v. Lou-Con, Inc., 293 F.3d 908, 911 (5th Cir. 2002) (". . . in declaratory judgment cases that involve the applicability of an insurance policy to a particular occurrence, 'the jurisdictional amount in controversy is measured by the value of the underlying claim [–] not the face amount of the policy.'") (quoting 14B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Proc.: Jurisdiction 3d § 3710 (3d ed. 1998)); Budget Rent-A-Car, Inc. v. Higashiguchi, 109 F.3d 1471, 1473 (9th Cir. 1997) ("Because the applicability of Budget's liability coverage to a particular occurrence is at issue, the amount in controversy is the value of the underlying potential tort action.").

As to the second strand, for certain claims, the entire insurance policy may be in controversy.  For example, where the "substance of the declaratory judgment action seeks to determine the validity of an insurance policy, then the policy limit is the amount in controversy." Infinity Ins. Co. v. Guerrero, No. 07 Civ. 583 (AWI) (TAG), 2007 U.S. Dist. LEXIS 60631, at *10, 2007 WL 2288324, at *3 (E.D. Cal. Aug. 6, 2007); see Hawkins v. Aid Ass'n for Lutherans,

8

338 F.3d 801, 805 (7th Cir. 2003) ("when the validity of a policy (as opposed to the insurer's obligation to pay) is in dispute, the face value of that policy is a proper measure of the amount-in-controversy."); Mass. Cas. Ins. Co. v. Harmon, 88 F.3d 415, 416-17 (6th Cir. 1996) (citations omitted)); Budget Rent-A-Car, Inc., 109 F.3d at 1473 ("Budget's maximum liability under the Rental Agreement is relevant to determining the amount in controversy only if the validity of the entire insurance policy is at issue . . . .") (emphasis added); see also Pyskaty v. Wide World of Cars, LLC, 856 F.3d 216, 227 (2d Cir. 2017) (agreeing with the Third and Sixth Circuits that ". . . where a plaintiff seeks to rescind a contract, the contract's entire value, without offset, is the amount in controversy") (citing Rosen v. Chrysler Corp., 205 F.3d 918, 921 (6th Cir. 2000); Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 329 (3d Cir. 2009)).  The caselaw is unclear as to whether the proper rule is that validity of the entire insurance policy must be at issue, or whether disputing a portion of the policy is sufficient.  Compare Hawkins, 338 F.3d at 805 ("The Hawkins plaintiffs are not only seeking money damages, but are also attacking the validity of their policies by seeking to nullify the arbitration provisions and to enjoin AAL from cancelling policies of class members who fail to pay premiums."), and Stachewicz v. Nat'l Union Fire Ins. Co., No. 3:09 Civ. 470 (JPG), 2009 U.S. Dist. LEXIS 87398, at *7, 2009 WL 3065065, at *3 (S.D. Ill. Sep. 23, 2009) ("Unlike the insured in Hawkins, [Plaintiff] does not seek to invalidate any part of the policy.") (emphasis added) with Hartford Ins. Group, 293 F.3d at 911 (policy limits are the proper measure of amount-in-controversy only if the declaratory action impacts the validity of the entire contract between the parties) (emphasis added); accord Budget Rent-A-Car, Inc., 109 F.3d at 1473.  The court in Porter v. Am. Heritage Life Ins. Co. provided a useful summary of the caselaw in this area:

> While these cases do not chart a clear path, some common sense principles come through: When the validity of an insurance policy is in dispute, a finding that it is

9

> valid may, or may not, bring back to life all the coverage possible under the policy. If the object of the litigation is to re-establish the operation of the policy for all purposes, the full face value of the policy is at stake for the insurance company, and is, therefore, the amount in controversy. However, if something less than the full reinstatement of the policy is the plaintiff's goal, then the insurance company likely has less at stake.

956 F. Supp. 2d 344, 348 (D.R.I. 2013).

Plaintiff seeks to have Defendant "defend and indemnify under the Policy" including indemnifying "any reasonable settlement of the Claim and/or Underlying Action" "up to the loss limit applicable" or, in the alternative, assuming the defense of the "Claim and/or the Underlying Action" "within policy limits." Compl. ¶ 33.  Plainly stated, Plaintiff seeks the full benefits to which it would allegedly be entitled under the Policy notwithstanding Defendant's claimed exclusion for 21 Park Place.  See, e.g., Duzer Realty Corp. v. U.S. Underwriters Ins. Co., No. 12 Civ. 926 (NGG) (JMA), 2012 U.S. Dist. LEXIS 97032, at *5, 2012 WL 2872306, at *2 (E.D.N.Y. July 12, 2012) ("Here, the object of [the insured]'s suit is a judicially enforceable right to full indemnification for any damages it may owe [the underlying plaintiff] up to one million dollars.").  Neither party has sought a full rescission of the Policy, but neither is the relief sought as straightforward as interpreting whether a given incident is covered under the agreed-upon terms.  The core of the dispute here concerns whether the policy agreed upon failed to exclude or did exclude 21 Park Place from coverage because the policy mailed to Plaintiff did not physically include a copy of the exclusion.  The relief sought by Plaintiff, both contractual and declaratory, would necessarily require a finding that the policy did not include the endorsement excluding coverage that Defendant seeks to include.  See Compl. ¶¶ 26-34.  Defendant's counterclaim seeks a declaration to the contrary.  See Answer, ECF No. 8 ¶ 79.

10

Plaintiff argues that the proper measurement of the amount in controversy is not the limit of coverage sought under the Policy, but rather the value of the underlying claim or claims[2] for damages incurred because of the collapse.  See Mot. Rmd. p. 5; ECF No. 21, generally.  This view is in some logical tension with the position that Plaintiff seeks the full benefit of the amounts available under the policy – as would most litigants seeking declaratory or injunctive relief for prospective coverage under an insurance policy.  Although the Court's inquiry would certainly be simpler if the entire value of the policy were the amount in controversy, the declaratory relief sought puts something less than the validity of the entire policy, for all purposes, at issue.  For example, there may be other construction projects for which the Policy, regardless of the fate of the exclusion disputed here, would provide coverage to Plaintiff.[3]  It therefore stands to reason that the entire value of the policy is not at issue here.  Some value or benefit from the Policy may remain regardless of the outcome of this action.  In the absence of controlling law from the Second Circuit directing the Court to consider the full value of the policy under these circumstances, this Court instead follows the mandate to resolve any doubts against removability, and considers the more difficult test – the value of the underlying claims as the amount in controversy.  See Somlyo v. J. Lu-Rob Enters., Inc., 932 F.2d 1043, 1045-46 (2d Cir. 1991) ("In light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the

---

[2] As discussed below, Plaintiff contends the Court should disregard the Seneca Claim entirely.

[3] Although neither party has submitted the entire Policy for the Court's consideration, the existing record contains references to the Policy potentially covering other projects and characterized as a Commercial General Liability policy providing "coverage, which is not limited to a single project, [which] is sometimes referred to as 'annual' or 'practice' coverage." See Answer, ECF No. 8 ¶¶ 53-57; see also ECF No. 15-4 (coverage disclaimer letter characterizing the Policy as one for "Commercial General Liability Coverage"); Compl. ¶ 6.

removal statute narrowly, resolving any doubts against removability.") (citing Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108 (1941)).

### c. The Likely Value Of The Consequences Of This Litigation Exceeds $75,000

The Court is persuaded that the "value of the consequences which may result from th[is] litigation" – that is, a finding as to the validity or invalidity of the endorsement at issue – is more likely than not in excess of $75,000 considering the impact on the underlying claims. See Beacon Constr. Co., 521 F.2d at 399.

### i. The Seneca Claim

At the very least, the instant matter concerns coverage for the Seneca Claim. Plaintiff urges the Court to disregard and not consider the Seneca Claim letter because "[i]t is rank hearsay" (ECF No. 21 p. 2), and it is "nowhere referenced in Plaintiff's Complaint against Defendant." See Reply ¶ 2 at ECF No. 16. The Court rejects Plaintiff's arguments. First, the Seneca Claim is referenced in Plaintiff's Complaint. See Compl. ¶¶ 30 (seeking to recover "all post-tender reasonable fees and expenses . . . necessarily incurred in the defense of the Underlying Action and the Seneca Claim"), 33 (alleging the Underlying Action and Seneca Claim are both covered by the Policy and that Defendant has a duty to defend and indemnify).

Second, the heart of Plaintiff's hearsay objection is that the Seneca Claim Letter might be offered for the truth of the matter asserted, i.e., that there was a claim in excess of $100,000. See ECF No. 21 p. 2 (". . . but what other purpose could it be offered for other than to show that there is a claim in excess of $75,000"). As discussed below, the letter is not offered for any purpose violating the prohibition against hearsay. "A statement is only hearsay if 'a party offers [it] to prove the truth of the matter asserted in the statement.'" Roberts v. Azize, 767 F. App'x 196, 199 (2d Cir. 2019) (alteration in original) (quoting Fed. R. Evid. 801(c)(2)). The claim letter

12

may be admitted and considered not as proof that the Seneca Claim is indeed valued at more than $100,000, but to demonstrate its effect on the listeners – the parties here – that they are on notice that a claim for at least that amount may be asserted against Cow Bay. See United States v. Dupree, 706 F.3d 131, 137 (2d Cir. 2013) (noting a "statement is not hearsay where, as here, it is offered, not for its truth, but to show that a listener was put on notice"); Smith v. City of N.Y., 388 F. Supp. 2d 179, 182 n.2 (S.D.N.Y. 2005) ("It is well established . . . that statements offered for their effect on the listener are non-hearsay.") (citing United States v. Garcia, 900 F.2d 571, 576 (2d Cir. 1990) (holding that statements were properly admitted as non-hearsay to provide context in which drug transaction occurred); United States v. Puzzo, 928 F.2d 1356, 1365 (2d Cir. 1991)); Pitterman v. Gen. Motors LLC, No. 3:14 Civ. 00967 (JCH), 2018 U.S. Dist. LEXIS 89587, at *84, 2018 WL 7118006 at *28 (D. Conn. Apr. 17, 2018) (reports that children shifted vehicles out of park and caused them to roll away were not admitted for the veracity of such reports, but only to prove that that General Motors was on notice of such reports, "which is a permissible nonhearsay purpose") (citing Crawford v. Tribeca Lending Corp., 815 F.3d 121, 126 (2d Cir. 2016) (loan documents properly admitted where they constituted a contract and carried independent legal force, and to demonstrate that plaintiff had notice of and received mandated disclosures); AT Engine Controls Ltd. v. Goodrich Pump & Engine Control Sys., Inc., 637 Fed. App'x 645, 650 n.7 (2d Cir. 2016).

    Third, Plaintiff submitted the same claim letter for coverage to Defendant through its retail insurance broker, Brooks-Waterburn Corp, along with a liability notice. See Liability Notice of Occurrence / Claim at ECF No. 15-3. The liability notice and Seneca Claim Letter, offered by Defendant, may be properly considered, inter alia, as an opposing party's statement under Fed. R. Evid. 801(d)(2) because the liability notice was a statement made by Plaintiff's

13

agent, its insurance broker, on a matter within the scope of its relationship with Plaintiff, i.e., claims submission for insurance coverage. Fed. R. Evid. 801(d)(2)(D). The fact of a potential claim in excess of $100,000 is one that Plaintiff, via its tender of the Seneca Claim, has manifested that it adopted or believed to be true under Fed. R. Evid. 801(d)(2)(B). See Fed. R. Evid. 801(d)(2)(B) advisory committee's note ("Adoption or acquiescence may be manifested in any appropriate manner."); 4 Wigmore, Evidence § 1073, at 129 (Chadbourn rev. 1972) ("written statements of a third person may be so dealt with by the party that his assent to the correctness of the statements may be inferred, and they would thus by adoption become his own statements" (emphasis in original)); id. at 138 ("The party's use of a document made by a third person will frequently amount to an approval of its statements as correct, and thus it may be received against him as an admission by adoption." (emphasis in original)); see also Schering Corp. v. Pfizer Inc., 189 F.3d 218, 239 (2d Cir. 1999). The liability notice and Seneca Claim Letter may also be considered for their notice and legal effect on the listener, Defendant. See Green Door Realty Corp. v. TIG Ins. Co., 329 F.3d 282, 288 (2d Cir. 2003) (even rumors of an unknown injured firefighter were sufficient to provide insured with notice of potential liability); George v. Celotex Corp., 914 F.2d 26, 30 (2d Cir. 1990) ("[t]o be sure, an out of court statement offered not for the truth of the matter asserted, but merely to show that the defendant was on notice of a danger, is not hearsay.") (citations omitted); Dupree, 706 F.3d at 137 (statement is not hearsay where its relevance lies in its legal effect) (citing Fed. R. Evid. 801(c) advisory committee's note (explaining that verbal acts, meaning statements affecting the legal rights of parties, are excluded from the definition of hearsay); United States v. Boulware, 384 F.3d 794, 806 (9th Cir. 2004) ("A prior judgment is not hearsay . . . to the extent that it is offered as legally operative verbal conduct that determined the rights and duties of the parties.")). If the

construction at 21 Park Place is indeed covered, Plaintiff will undoubtedly contend it has properly tendered the Seneca Claim for coverage, and therefore Defendant is obligated to indemnify same.

In short, the consequences which may result from this litigation include coverage for the Seneca Claim. Both parties have notice that more than $100,000 may be sought, regardless of whether or not the Seneca Claim is actually worth that amount.

### ii. The Murray Litigation

The Court also finds it more likely than not that the claims asserted here in regards to the Murray litigation are worth at least $75,000 when the values of the underlying claims, defense costs and attorneys' fees and costs are aggregated. As noted above, Plaintiff seeks to have Defendant indemnify it against, inter alia, the Murray litigation. Compl. ¶ 33. To determine the consequences which may result from that relief, the Court considers the value of the relief sought in Murray, incorporated by reference in the Complaint. See, e.g., Scottsdale Ins. Co. v. Acceptance Indem. Ins. Co., No. 19 Civ. 7294 (RA), 2019 U.S. Dist. LEXIS 208526, at *6-7, 2019 WL 6498316, at *4 (S.D.N.Y. Dec. 3, 2019) ("When seeking declaratory judgment to determine the applicability of an insurance policy, . . . the jurisdictional amount in controversy is measured by the value of the underlying claim.") (alteration in original) (internal quotation marks omitted) (quoting D'Andrea v. Encompass Ins. Co., No. 15 Civ. 0467 (FPG), 2016 U.S. Dist. LEXIS 40648, at *3, 2016 WL 11626468, at *1 (W.D.N.Y. Mar. 28, 2016)). The Murray Plaintiff seeks ten years of lost profits and interest for a bar/restaurant which occupied a portion of the first floor, second floor, mezzanine and cellar at 23 Park Place in Tribeca, a location in lower Manhattan. Murray Compl., ECF No. 15-5 ¶¶ 8-9, 16-18. In order to fall short of the

$75,000 requirement, the bar/restaurant would have to seek less than $7,500 per year (on average) in lost profits over the ten years remaining in the lease, a highly unlikely situation.

In addition to indemnification for this potential liability, Plaintiff seeks defense costs, attorney's fees and costs of retaining an expert witness necessarily incurred in the defense of the Murray litigation and to have Defendant assume the defense of the Murray action. Compl. ¶¶ 30, 33. In addition to Plaintiff Cow Bay, the Murray Plaintiff has sued 21 Park Place N.Y. L.P. and MG New York Architect PLLC. ECF No. 15-5. Further, the publicly available Murray docket in state court shows that each of these entities has cross-claimed against the others, and Plaintiff Cow Bay has also filed a third-party action for indemnification, contribution and breach of contract against All Pro Development LLC and BSD Environmental Group LTD. See Murray Place, Inc. v. 21 Park Place NY LP, et al., Sup. Ct. N.Y. Co., Index No. 157109/19, generally. On the basis of this record, the Court is unable to determine the likely full value of the costs and fees associated with defending the Murray litigation. That said, the Court can conclude, based on its experience and common sense, that at an absolute minimum, this relief is worth thousands of dollars – and far more likely worth tens of thousands of dollars (again, at a minimum). See Naji v. Lincoln, 665 F. App'x 397, 401 n.2 (6th Cir. 2016) ("[C]ourts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements.") (quoting Roe v. Michelin N. Am., Inc., 613 F.3d 1058, 1062 (11th Cir. 2010)). Thus, in light of the realities of litigation, the costs attendant thereto and common sense, the Court finds it more likely than not that the combination of the ten years of lost profits at a Tribeca bar/restaurant and the costs and fees of defending Plaintiff Cow Bay from the Murray litigation, will exceed the $75,000 threshold. The Court therefore finds that the

16

value of the consequences to the Murray action which may result from this litigation will more likely than not exceed $75,000.

Plaintiff cites to Robinson as supporting its position that any assessment of the value of the coverage sought in Murray would be "speculative." See Mot. Rmd. pp. 5-6; Reply ¶ 4 at ECF No. 16. In Robinson, the plaintiff challenged only the portion of a disability insurance contract that required her to submit to testing as a condition of benefits. See Robinson, 2019 U.S. Dist. LEXIS 64695, at **2-4. In deciding that the equitable relief was too speculative to factor into the amount in controversy, the Robinson Court noted:

> [t]he monetary value of the of the benefit that would flow to [Robinson] . . . depends on multiple contingencies, such as Robinson's future medical condition, the nature of the evidence Robinson supplies Berkshire as proof of that condition, and Berkshire's determination as to Robinson's eligibility for continued benefits.

Robinson, 2019 U.S. Dist. LEXIS 64695, at *10 (alteration in original) (internal citations omitted) (citing Russ v. Unum Life Ins. Co., 442 F. Supp. 2d 193, 198 (D.N.J. 2006); Am. Standard, Inc. v. Oakfabco, Inc., 498 F. Supp. 2d 711, 717 (S.D.N.Y. 2007)). The provisions Robinson challenged were essentially procedural. Altering those provisions would merely change the rules by which her claims would be handled and not (in and of themselves) directly increase or decrease the value or number of the claims which could be asserted under the policy. See Robinson, 2019 U.S. Dist. LEXIS 65695, at *10 ("Critically, even if the Court were to award Robinson the full declaratory relief she seeks, such relief would not require Berkshire to pay any future benefits . . . ."). Unlike Robinson, here, there are live claims under the policy, i.e., the Murray litigation and Seneca Claim, not dependent on multiple layers of contingencies and each more likely than not to be in excess of $75,000, for which coverage will be decided in this action. See also Am. Standard, 498 F. Supp. 2d at 718 (finding the value of the declaratory judgment speculative and indirect where ". . . American Standard has no direct monetary claim

17

arising under the agreements between the parties."); Russ, 442 F. Supp. 2d at 198 ("The object of this litigation is a declaration of plaintiff's rights in the future when he reached the age of 65. Right now, plaintiff is only 59. Consequently, the value of his rights under the policy after he turns 65 is only speculative and cannot be included in calculating the amount in controversy.") (citation omitted). Robinson is therefore not analogous.

### III. CONCLUSION

For the foregoing reasons, this Court respectfully recommends that Plaintiffs' motion to remand be denied.

### IV. OBJECTIONS

Written objections to this Report and Recommendation must be filed within fourteen days of service of this Report and in accordance with the Individual Rules of the Honorable LaShann DeArcy Hall. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file objections within the specified time waives the right to appeal. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008).

SO ORDERED.

Dated: Brooklyn, New York
February 1, 2020

*Vera M. Scanlon*
VERA M. SCANLON
United States Magistrate Judge